UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| WILL MCGINNIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 25-045-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LEXINGTON FAYETTE URBAN | ) | **MEMORANDUM OPINION** |
| COUNTY GOVERNMENT, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

This matter is pending for consideration of *pro se* Plaintiff Will McGinnis's motion to amend his Complaint and Defendant Lexington Fayette Urban County Government's ("LFUCG") motions for partial summary judgment and for judgment on the pleadings. [Record Nos. 7, 9, and 17] For the reasons that follow, McGinnis's motion to amend [Record No. 17] will be granted, and LFUCG's motions [Record Nos. 7 and 9] will be denied.

McGinnis initiated this action against the Lexington Fayette Urban County Government *Division of Community Corrections* on February 19, 2025. [Record No. 1] On March 17, 2025, LFUCG moved for partial summary judgment in which it argued Count 1 of the Complaint should be dismissed because McGinnis could not establish that he suffered an adverse employment action. [Record No. 7] The following day, LFUCG moved for judgment on the pleadings, arguing that McGinnis improperly sued the Division of County Corrections rather than LFUCG itself. [Record No. 9]

- 1 -

On May 5, 2025, United States Magistrate Judge Stinnett submitted a Recommended Disposition in which he recommended the undersigned dismiss this matter without prejudice because McGinnis had improperly sued the wrong entity. [Record No. 15] Because Magistrate Judge Stinnett recommended dismissal without prejudice, he did not address LFUCG's separate motion for partial summary judgment. Thereafter, McGinnis moved for leave to amend his complaint [Record No. 17] and tendered an amended complaint [Record No. 16] that identifies LFUCG as the proper defendant rather than its Division of Community Corrections.

## I.

McGinnis began work as a corrections officer recruit at the LFUCG Division of Community Corrections on June 26, 2023. [Record No. 16, ¶ 1] On September 1, 2023, he graduated from the training academy and became a corrections officer with full police powers. [*Id.* at ¶ 2] However, McGinnis allegedly suffers from major depressive disorder and has dealt with depression for over 10 years. [*Id.* at ¶ 6] He was assigned to a medical unit within the division of community corrections on January 6, 2024. There, McGinnis witnessed an inmate who was bleeding from a self-inflicted cut. [*Id.*, p. 10] This purportedly exacerbated McGinnis's depression to a level at which "he was unable to work." [*Id.*]

On January 16, 2024, McGinnis emailed his superior (Major LeMonds) to inform him that he was upset and unable to work, and to inquire about a potential leave of absence. [*Id.* at ¶ 5] But LeMonds advised McGinnis that a leave of absence was not an option. [*Id.*] Thereafter, McGinnis contacted Human Resources to determine if options other than resignation were available. [*Id.*] McGinnis also contends that he discussed his depressive condition with multiple superiors in late 2023 and early 2024. He states that the discussions

included a captain, a sergeant, and a major (Major Crawford). [*Id.*] However, McGinnis claims that he decided to resign because he was advised that a leave of absence was not an option and Human Resources told him he could always reapply. [*Id.*]

McGinnis sent a resignation email to Major LeMonds on February 16, 2024. According to the plaintiff, LeMonds never responded so McGinnis met with Major Crawford on February 20, 2024, to discuss his resignation. [*Id.*] During the meeting, Crawford allegedly told McGinnis he was surprised by the plaintiff's resignation, because he believed McGinnis loved his job, and thought it appeared that McGinnis did not want to resign. [*Id.*] While agreeing with Crawford's assessment, McGinnis stated that he had no real choice due to his depression. [*Id.*] And when Crawford inquired about potential accommodations, McGinnis suggested working as a "rover." [*Id.*] While Crawford believed such an assignment would be unlikely, his alternative suggestion of a shift change was rejected by the plaintiff. Finally, in response to Crawford's raising the possibility of a leave of absence, McGinnis explained that his earlier request for that relief had been denied. [*Id.*] In conclusion, Crawford indicated that if McGinnis resigned and re-applied for his previous position within a year, he would not be required to again enroll in the training academy. [*Id.*]

McGinnis asserts that a leave of absence was available under his collective bargaining agreement. Alternatively, he contends that leave was subject to Chief Colvin's discretion. [*Id.*, p. 6] McGinnis also argues that he performed all the duties of a correction officer and "he never suspected that there would be an issue when and if he reapplied." [*Id.*, p. 11] However, he states that when he attempted to reapply to his past position, he discovered that he would not be considered for re-hire and he could not reapply for a year. [*Id.*, pp. 6-7]

In its response to an Equal Employment Opportunity Commission ("EEOC") inquiry, LFUCG stated that McGinnis was not re-hired due to prior workplace conduct and harassing post-employment conduct. [*Id.*, p. 7] McGinnis disputes this, and claims LFUCG's explanation was pretextual.

## II.

Rule 15 of the Federal Rules of Civil Procedure allows parties to amend a complaint "only with the opposing party's written consent or the [C]ourt's leave.  The [C]ourt should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, amendment "should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party or would be futile."  *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (quoting *Crawford v. Roane,* 53 F.3d 750, 753 (6th Cir. 1995)).

In evaluating whether McGinnis's motion to amend would be futile, the undersigned tests the sufficiency of the pleadings.  *See id.* at 294-295, (evaluating dismissal based on futility under Rule 12(b)(6) motion to dismiss standard).

## III.

### A.  Motion to Amend Complaint

### Delay and Undue Prejudice

LFUCG argues that allowing McGinnis to amend his complaint would cause undue prejudice and that the motion is untimely.  [Record No. 22, p. 2] It further asserts that McGinnis waited until May 7, 2025, to move to amend his complaint rather than attempting to remedy the deficiency following LFUCG's March 18, 2025, motion for judgment on the pleadings which identified the fact that McGinnis sued the wrong defendant.   However, as a *pro se* litigant, McGinnis likely did not know that LFUCG's argument had merit until it was

addressed by Magistrate Judge Stinnett.  Further, McGinnis filed the motion to amend his Complaint just two days after the Recommended Disposition was issued.  [Record No. 16] Under the circumstances presented, the undersigned disagrees with the assertion that "the amendment would prejudice LFUCG by prolonging litigation and undermining the finality of the Magistrate Judge's Recommended Disposition."  [Record No. 22, p. 3] LFUCG is not prejudiced in defending the case on the merits in this proceeding.  Even if the Recommended Disposition were adopted in full, McGinnis could re-file his complaint because dismissal of the present action would be without prejudice.

### Futility

Next, LFUCG contends McGinnis does not adequately allege he is disabled under the Americans with Disabilities Act ("ADA") because depression is not always a disability within the scope of the statute.  *See Keogh v. Concentra Health Servs., Inc.*, 752 F. App'x 316, 324 (6th Cir. 2018) ("A prima facie case of disability discrimination under the ADA requires that a plaintiff show: 1) he or she is disabled[.]") (quoting *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008)).  However, at this stage, a full evaluation into the scope of McGinnis's depression is premature.

LFUCG argues that McGinnis has not demonstrated that his depression substantially limits any major life activity, a requirement to establish disability under the ADA.  But "[r]egulations promulgated by the Equal Employment Opportunity Commission include working as a 'major life activity.'"  *Huge v. Gen. Motors Corp.*, 62 F. App'x 77, 80 (6th Cir. 2003) (citing 29 C.F.R. 1630.2(i)).  In his Amended Complaint, McGinnis alleges that depression was affecting his ability to attend work, caused him to repeatedly call in sick, and

that his depression was visibly noticeable.  [Record No. 16, p. 2]  At this stage, these assertions plausibly allege a disability.

LFUCG also argues that McGinnis never suffered an adverse employment action under a "disability discrimination" test.  *See Keogh*, 752 F. App'x at 324 (applying McDonnell Douglass "indirect evidence" test).  However, McGinnis raises a failure to accommodate claim, which is analyzed under a different standard.  *See Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 417 (6th Cir. 2020) ("Because the record reflects that Fisher's claim was based on Nissan's failure to offer a reasonable accommodation, it involves *direct evidence* of discrimination under the ADA.") (emphasis added).  Under the proper standard, McGinnis "bears the burden of establishing (1) that he is disabled, and (2) that he is otherwise qualified for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged essential job requirement eliminated; or (c) with a proposed reasonable accommodation." *Id.* (cleaned up).  Assessing the sufficiency of the pleadings of the Amended Complaint, McGinnis meets this burden.

As discussed above, McGinnis sufficiently alleges he is disabled under the ADA.  He further alleges that he was otherwise qualified for the role, and that his leave of absence was a proposed reasonable accommodation, which LFUCG denied.  [Record No. 16, pp. 11 and 14]  McGinnis's motion to amend the Complaint is not futile because, at the minimum, his failure to accommodate claim would survive a motion to dismiss.

### B.  Motion for Partial Summary Judgment

LFUCG's motion for partial summary judgment leans on the "adverse employment action" argument it advances in its response to McGinnis's motion to amend his Complaint.  [Record No. 7]  But as explained above, LFUCG applied the wrong legal standard.  An

"adverse employment action" is not required to establish a failure to accommodate claim. *See Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007) ("When an ADA plaintiff premises his claim upon direct evidence, we jettison the familiar *McDonnell Douglas* burden-shifting framework applicable in indirect-evidence cases[.]"). Thus, LFUCG's motion for partial summary judgment fails for the same reason outlined above.

Finally, LFUCG's motion for judgment on the pleadings will be denied as moot. McGinnis's Amended Complaint properly lists LFUCG as the defendant, which remedies the deficiency in the original Complaint. Under the same reasoning, United States Magistrate Judge Stinnett's Recommended Disposition will be denied as moot because it addresses the same concern regarding the improper defendant, and it was issued before McGinnis moved to amend his Complaint.

**IV.**

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1.    Plaintiff Will McGinnis's motion for leave to file an Amended Complaint [Record No. 17] is **GRANTED**.

2.    Defendant Lexington Fayette Urban County Government's motion for partial summary judgment [Record No. 7] is **DENIED**.

3.    Defendant Lexington Fayette Urban County Government's motion for judgment on the pleadings [Record No. 9] is **DENIED**.

4.    United States Magistrate Judge Stinnett's Recommended Disposition [Record No. 15] is **DENIED**, as moot.

Dated: June 12, 2025.



Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky