UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| WILL MCGINNIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:25-CV-45-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| LEXINGTON-FAYETTE URBAN COUNTY GOVERNMENT, | ) | |
| | ) | |
| | ) | |
| Defendant. | | |

*** *** *** ***

This matter is before the Court on the Report and Recommendation ("Recommendation") issued by United States Magistrate Judge Matthew A. Stinnett, [R. 121], which addresses Defendant Lexington-Fayette Urban County Government's ("LFUGC") Motion for Summary Judgment, [R. 106], and Motion to Exclude,[1] [R. 107]. On July 16, 2026, Magistrate Judge Stinnett issued his Recommendation, recommending that the Court grant LFUGC's motion for summary judgment and deny LFUGC's motion to exclude as moot. [R. 121, pp. 16–17]. On July 27, 2026, McGinnis filed Objections to the Recommendation, [R. 123], and LFUGC responded, [R. 124]. For the reasons stated below, Magistrate Judge Stinnett's Recommendation is adopted in part, modified in part, and rejected in part. The Court adopts Magistrate Judge Stinnett's recommendation granting LFUCG's motion for summary judgment, although the Court modifies in part the reasoning underlying that recommendation. Moreover, the Court declines to adopt Magistrate Judge Stinnett's recommendation denying LFUCG's motion to exclude as moot and instead grants LFUCG's motion to exclude. Finally, the Court overrules McGinnis's objections.

[1] Although the corresponding docket entry labels LFUCG's motion at R. 107 as a motion in limine, the Court, having reviewed the motion, construes the motion as a motion to exclude and refers to the motion as such herein.

## I. BACKGROUND

This case arises out of Plaintiff Will McGinnis's employment as a corrections officer at the Fayette County Detention Center ("FCDC"). [R. 106, p. 1]. McGinnis began working at the FCDC in June 2023. *Id.* Several months later, McGinnis received an oral warning for an incident that occurred on January 6, 2024. [R. 106-6 (Incident Report)]. McGinnis verbally abused the other officer in front of several witnesses, making several statements demeaning that officer's character. *Id.* The oral warning form stated that McGinnis was in violation of LFUCG Uniform Disciplinary Code 8b: Malicious or Deliberate Behavior. *Id.* In an email sent to Major Matthew LeMonds on January 16, 2024, McGinnis disagreed with the charge and told Major LeMonds that he was "very upset and unable to work" and was "requesting a leave of absence." [R. 106-7 (Email)]. Major LeMonds responded and told McGinnis that he either needed to schedule his accrued vacation and holiday leave or report to work as assigned. *Id.*

McGinnis subsequently sent an email to his supervisors on February 16, 2024, stating that he wanted to resign from his position. [R. 106-8 (Resignation Email)]. In response, one of his supervisors, Major Jacob Crawford, asked McGinnis to meet with him to discuss why he wanted to resign. *Id.* McGinnis and Major Crawford met on February 20, 2024, at FCDC. [R. 106-5 (McGinnis Dep.), 149:11–151:10]; [R. 106-9 (Crawford Dep.), 107:2–12.] There is some dispute over the scope of the conversation about McGinnis's mental health and accommodation requests during the meeting, [R. 106, pp. 2–3], but it is not contested that by the end of the meeting, Major Crawford had decided that McGinnis's requests were not feasible and would violate the collective bargaining agreement. [R. 106-9, 47:10–48:8]; [R. 106-10 (Copy of Collective Bargaining Agreement)]. At the end of the meeting, McGinnis signed a resignation form, stating that he

resigned for "Mental Health Reasons." [R. 106-11 (Resignation Form)]. However, McGinnis did not present any medical documentation of a disability at this time. *See id.*

Several weeks later, on March 7, 2024, McGinnis informally sought to return to work by submitting a memorandum of an "Inmate Pilot Program" that he developed for that purpose. [R. 16-2]. Nothing came of this informal request, and then on April 11, 2024, McGinnis filed for Disability Insurance Benefits with the Social Security Administration ("SSA"). [R. 106-13 (Function Report to SSA)]. McGinnis's application states that he filed for disability due to "major depressive disorder" and that his inability to work began on February 20, which is the date that he resigned from LFUCG. *Id.* McGinnis explained in his application that his major depressive disorder limited him from "Going outside. Being around people. Interacting w/ people in any way." *Id.* McGinnis further stated that because of his condition, he could no longer "[g]o to work" or "[w]ork around people." *Id.* The SSA found that he was not disabled and denied his claim on May 29, 2024. [R. 106-12 (Disability Determination Explanation)].

McGinnis then sent an email to LFUCG on June 7, 2024, formally reapplying to work as a corrections officer. [R. 106-14 (Reapplication Email)]. Each of McGinnis's supervisors recommended against rehiring McGinnis due to his prior insubordination and inappropriate conduct, [R. 106-15], and LFUCG ultimately let McGinnis know that his job application would remain on file for the rest of the fiscal year. [R. 106-17].

At the same time, McGinnis applied for unemployment benefits with the Office of Unemployment Insurance, certifying that he was medically able to work in his June 2024 application. *See* [R. 106-17]. McGinnis went on to appeal the SSA decision on his Disability Insurance Benefits in November 2024, claiming that his condition had worsened, that it was difficult for him to leave his house, and that he was not "able to mentally be able to show up on a

regular basis to any job." [R. 106-20 (Second Function Report to SSA)]. The SSA denied McGinnis's appeal and again found that he was not disabled. [R. 106-19 (Affirmance of Disability Determination)].

Following these events, McGinnis filed suit against LFUCG. McGinnis alleges that he was denied reemployment at LFUCG due to his major depressive disorder, an Americans with Disability Act ("ADA")-qualifying disability. [R. 16 (Amended Complaint)]. He brings claims in two counts: (1) a claim for violation of the 1990 ADA due to disability discrimination, failure to provide reasonable accommodations, and failure to engage in the interactive process (Count I); and (2) a claim for violation of the 1990 ADA due to discrimination in the rehiring process and retaliation of resigning his position due to depression (Count II). *Id.* at 13–15. On May 12, 2026, LFUCG filed the instant motion seeking summary judgment on all of McGinnis's claims, [R. 106], and the instant motion to exclude the affidavit and proposed expert testimony of McGinnis's doctor, Dr. Voogt, [R. 107]. McGinnis responded to both motions, [R. 108]; [R. 112], and LFUCG replied, [R. 111]; [R. 116]. On July 16, 2026, Magistrate Judge Stinnett issued his Recommendation, recommending that the Court grant LFUGC's Motion for Summary Judgment and deny LFUGC's Motion to Exclude as moot. [R. 121, pp. 16–17]. On July 27, 2026, McGinnis filed Objections to the Recommendation, [R. 123], and LFUGC responded, [R. 124].

## II. LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1)(A), a district court judge may designate a magistrate judge to submit proposed findings of fact and recommendations for the disposition of certain motions. Within fourteen days of being served a copy of that report and recommendation, any party may file written objections to the magistrate judge's proposed findings and recommendation. § 636(b)(1)(C). When no objections are made, this Court is not required to "review . . . a

magistrate's factual or legal conclusions, under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 151 (1985). For properly made objections to dispositive matters, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," *id.*; *see also Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986), and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Corell v. CSX Transp., Inc.*, 378 F. App'x 496, 499 (6th Cir. 2010) (quoting 28 U.S.C. § 636(b)(1)(C)).

A specific objection, which preserves the issue for appeal, "explains and cites specific portions of the report which counsel deems problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 1997) (citation modified) (internal quotation marks omitted) (quoting *Smith v. Chater*, 121 F.3d 709 (Table), 1997 WL 415309, at *2 (6th Cir. 1997)). A general objection that fails to identify specific factual or legal issues from the recommendation is not permitted; general objections duplicate the magistrate's efforts and waste judicial economy. *Howard v. Sec. of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

"[A]n objection to a[] [Report and Recommendation] is not meant to be simply a vehicle to rehash arguments set forth in the petition, and the Court is under no obligation to review de novo objections that are merely an attempt to have the district court reexamine the same arguments set forth in the petition and briefs." *Dundee v. Univ. Hosps. Corp*, No. 1:19-CV-01141, 2020 WL 511520, at *1 (N.D. Ohio Jan. 31, 2020) (citing *Howard*, 932 F.2d at 509); *see also Roberts v. Warden, Toledo Corr. Inst.*, No. 1:08-CV-00113, 2010 WL 2794246, at *7 (S.D. Ohio July 14, 2010) ("The Court is under no obligation to review de novo objections that are merely perfunctory or an attempt to have the Court reexamine the same arguments set forth in the original petition."); *McClain v. Hanna*, No. 2:19-CV-10700, 2019 WL 7288768, at *2 (E.D. Mich. Dec. 30, 2019)

("[O]bjections to a report and recommendation should not be used as a vehicle to rehash arguments previously made by the objecting party.").

## III. ANALYSIS

Magistrate Judge Stinnett recommended that the Court grant LFUGC's motion for summary judgment and deny LFUGC's motion to exclude as moot. [R. 121, pp. 16–17]. McGinnis raises several objections to Magistrate Judge Stinnett's Recommendation. [R. 123]. Because Magistrate Judge Stinnett denied LFUCG's motion to exclude as moot, none of McGinnis's objections relate to the motion to exclude. *See id.* However, for the reasons discussed below, the Court finds that addressing the motion to exclude on the merits is necessary to resolve several of McGinnis's objections and rule on LFUCG's motion for summary judgment. Accordingly, in the interest of clarity, the Court's analysis will proceed in the following order. First, the Court will analyze LFUCG's motion to exclude. Next, the Court will turn to LFUCG's motion for summary judgment. In doing so, the Court will review Judge Stinnett's recommendations and any objections thereto, and will then determine whether any of McGinnis's claims in either count survive summary judgment. Finally, the Court will address any remaining issues in McGinnis's objections.

### A. Motion to Exclude

LFUCG filed a motion to exclude, [R. 107], contemporaneously with its motion for summary judgment, [R. 106]. In its motion to exclude, LFUCG argues that the affidavit and opinions of McGinnis's doctor, Dr. Shannon Voogt—who McGinnis identified as an expert—should be excluded. [R. 107]. LFUCG contends that McGinnis failed to properly disclose Dr. Voogt's affidavit and opinions as required by Federal Rule of Civil Procedure 26(a), *id.* at 2–5, and that regardless, Dr. Voogt's affidavit and opinions do not meet the requirements of Federal Rule of Evidence 702. *Id.* at 5–6. In response, McGinnis argues that Dr. Voogt is his treating

physician, not a retained expert, and thus was only required to provide a summary of her anticipated subject matter and opinions. [R. 108, p. 4]. McGinnis contends that his Rule 26 disclosure complied with this requirement but that regardless, LFUCG cannot establish prejudice sufficient to justify exclusion. *Id.* at 4–5. Finally, McGinnis argues that Dr. Voogt's opinions satisfy Rule 702. *Id.* at 6–7.

The Court finds that Dr. Voogt's affidavit and testimony are excludable based solely on McGinnis's failure to comply with Rule 26(a), so the Court need not and will not address LFUCG's Rule 702 arguments. Even assuming, as McGinnis contends, that Dr. Voogt is a non-retained treating physician, [R. 108, pp. 2–3], McGinnis was still required to disclose a "summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).[2] Neither McGinnis's initial disclosure in 2025, nor Dr. Voogt's affidavit, dated March 18, 2026, satisfy this requirement.

McGinnis disclosed Dr. Voogt as a proposed expert on November 28, 2025. [R. 110, p. 1]. That disclosure only provides a general list of topics Dr. Voogt might address, without disclosing the substance of her opinions or referring to any facts. *See id.* at 1–2. Thus, McGinnis's initial disclosure is not a summary of the facts and opinions to which Dr. Voogt is expected to testify. *See, e.g.*, *West v. Heimermann*, No. 22-3532, 2023 WL 1822210, at *3 (6th Cir. Feb. 8, 2023)

[2] McGinnis concedes that Dr. Voogt is subject to the requirements of Rule 26(a)(2)(C). [R. 108, pp. 1, 4, 8]. However, even if McGinnis had not conceded that Dr. Voogt is subject to the requirements of Rule 26(a)(2), the Court notes that Dr. Voogt's affidavit and proposed testimony contain several expert opinions that are governed by Rule 26(a)(2)(C), including her opinions about the anticipated necessity of certain accommodations, the anticipated impact of certain accommodations, and whether McGinnis had an ADA-qualifying disability or was a qualified individual under the ADA. *See, e.g.*, *Braun v. Norton Healthcare, Inc.*, No. 3:24-CV-00039-DJH-CHL, 2025 WL 1698143, at *3 (W.D. Ky. June 17, 2025) (holding that the plaintiff's disclosure of his doctor needed to comply with Rule 26(a)(2)(C) because the doctor intended to present evidence on "the future anticipated effects of [a diagnosis] on Plaintiff," the "future anticipated treatment of Plaintiff's [diagnosis]," and the "reasonable accommodations he recommended"); *see also Garrison v. Sam's E., Inc.*, No. 1:16-XC-00152-GNS, 2018 WL 6566546, at *2 (W.D. Ky. May 24, 2018) ("[W]hen a party intends to solicit testimony from a treating physician that goes beyond the facts of diagnosis and treatment, and into areas such as causation, *future treatment or impairment*, the anticipated opinion testimony is subject to disclosure under Rule 26(a)(2)." (emphasis added)).

(holding that plaintiff's expert disclosure that provided only that the expert would give testimony as to the "Physical and mental condition of [the plaintiff], historically and at the time [the defendant] acquired engines and parts" was not a summary of the facts and opinions as required by Rule 26(a)(2)(C)); *Little Hocking Water Ass'n, Inc. v. E.I. DuPont de Nemours & Co.*, No. 2:09-CV-1081, 2015 WL 1105840, at *5 (S.D. Ohio Mar. 11, 2015) (holding that disclosures of non-retained experts "which merely state[d] the topics of the opinions to which the expert [would] testify, without stating any view or judgment on such topics[,] . . . do not satisfy (a)(2)(C)"); *MV Louisville, LLC v. Frankenmuth Mut. Ins. Co.*, 2022 WL 3362280, at *8 (W.D. Ky. Aug. 15, 2022) ("MV provided none of Liggett's actual opinions in its disclosure, nor does it mention, even briefly, the facts on which Liggett relied in forming his opinions. That is not enough to satisfy Rule 26(a)(2)(C)." (citation omitted)).

Dr. Voogt's affidavit does not cure this deficiency. First, the affidavit is untimely. On July 18, 2025, the Court entered a Scheduling Order requiring McGinnis to disclose the identity of his expert witnesses and any reports or summaries required by Rule 26(a)(2) no later than January 17, 2026. [R. 33]. McGinnis disclosed Dr. Voogt as a proposed expert on November 28, 2025. *See* [R. 110]. As discussed above, that disclosure only provides a general list of topics Dr. Voogt might address, without disclosing the substance of her opinions. The content of Dr. Voogt's affidavit, which was completed on March 18, 2026—two months after the deadline for expert discovery had passed—goes beyond that of McGinnis's initial disclosure about her testimony. *See* [R. 110-1]. While the initial disclosure only includes broad subject areas like "Expert opinion. . . [r]egarding what accommodations are needed," [R. 110], Dr. Voogt opines in her affidavit that she recommends the accommodation of reasonable leave and discusses the time frame of that recommendation. [R. 110-1, pp. 1–2]. Her affidavit references information not offered or identified

in McGinnis's initial disclosure, like when she began treating McGinnis and the changing severity of his diagnosis. *See id.* Accordingly, Dr. Voogt's affidavit falls short of Rule 26(a) disclosure requirements based on timeliness alone.

Even if the Court were to excuse the untimeliness of the affidavit, the content of the affidavit is deficient under Rule 26(a). Although the affidavit identifies that Dr. Voogt began treating McGinnis in 2022, states that he suffers from depression, and provides, in a conclusory sentence, that Dr. Voogt recommends intermittent leave to allow McGinnis to perform his job functions, it provides no facts supporting those opinions. *See* [R. 110-1, pp. 1–2]. That is not enough to satisfy Rule 26(a)(2)(C). *See Little Hocking Water Ass'n*, 2015 WL 1105840, at *9 ("Further, . . . a summary of facts supporting those opinions under Rule 26(a)(2)(C) means a brief account of facts—only those on which the expert actually relied in forming his or her opinions—that states the main points derived from a larger body of information; mainly stating the topic matters of facts relied upon does not suffice."); *Braun*, 2025 WL 1698143, at *3 ("A sufficient expert disclosure under Rule 26(a)(2) requires two things: (1) a brief account of the main opinions of the expert that state a view or judgment regarding a matter that affects the outcome of the case; and (2) *a brief account of the facts the expert relied on in forming his or her opinions* that states the main points derived from a larger body of information." (emphasis added)).

Moreover, while McGinnis argues that LFUCG "possessed ADA medical documentation completed by Dr. Voogt years before the challenged affidavit," [R. 108, p. 4], he cannot rely on the fact that he provided LFUCG with copies of records to satisfy the requirements of Rule 26(a)(2)(C). *See, e.g.*, *Ramsey v. Lowe's Home Ctrs., LLC*, No. 6:24-CV-001-CHB, 2025 WL 2577791, at *16 ("Moreover, Plaintiff cannot rely on the fact that he 'provided Defendant with copies of his medical records' to satisfy his duties under Rule 26(a)(2)(C)."); *McFerrin v. Allstate*

*Prop. & Cas. Co.*, 29 F. Supp. 3d 924, 932 (E.D. Ky. 2014) ("The purpose of Rule 26 disclosures of witnesses, both fact witnesses and expert witnesses, is to enable the parties to adequately prepare for trial. The commentary of Rule 26 states that the duty to disclose 'extends to witnesses that the other party already knows of and to documents that the other party knows of or even possesses.'" (quoting Fed. R. Civ. P. 26, Practice Commentary)). Accordingly, the Court holds that McGinnis's disclosure of Dr. Voogt is deficient under Rule 26(a)(2)(C).

Rule 37(c)(1) addresses the penalties for a party's failure to comply with the disclosure deadlines set out in Rule 26. Rule 37(c)(1) provides, in relevant part,

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed R. Civ. P. (37)(c)(1). That rule "requires absolute compliance with Rule 26(a); that is, it mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." *Parton v. Johnson & Johnson*, No. 18-CV-419, 2021 WL 3921339, at *4 (E.D. Tenn. Sep. 1, 2021) (quoting *Hunt v. Hadden*, 127 F. Supp. 3d 780, 789 (E.D. Mich. 2015), *aff'd*, 665 F. App'x 435 (6th Cir. 2016)). The burden of demonstrating that a violation was harmless or substantially justified rests on the potentially sanctioned party. *See id.* If that party fails to meet its burden, "exclusion of expert testimony is the standard sanction." *Id.* (quoting *Hunt*, 127 F. Supp. 3d at 789).

In determining whether a non-disclosure was substantially justified or harmless, the Sixth Circuit considers five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)). "District courts have broad discretion in applying these factors and need not apply each one rigidly." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (citation omitted).

Applying the *Howe* factors in this case, the Court finds that McGinnis's failure to comply with the requirements of Rule 26 was neither "substantially justified" or "harmless." *Howe*, 801 F.3d at 748. As to the first factor, surprise to LFUCG, the Court finds that this factor weighs in favor of excluding the affidavit and proposed testimony of Dr. Voogt. LFUCG contends that because McGinnis did not provide the affidavit until March 18, 2026, he "gave LFUCG only a little more than three weeks to try to coordinate a deposition for Dr. Voogt before the discovery deadline passed [on April 13, 2026]. It could not retain a rebuttal expert within that shortened timeframe or properly address her opinions listed in the affidavit." [R. 107, p. 3]. The Court agrees. *See Howe*, 801 F.3d at 748 (considering whether the opposing party "had a full opportunity during" discovery to explore the proof); *Howard v. Bell Cty. Fiscal Court*, No. 6:23-cv-219-CHB, 2026 WL 2922676, at *10 (E.D. Ky. Sep. 29, 2026) ("Indeed, the very purpose of expert discovery is to 'allow an opponent to examine an expert opinion for flaws and to develop counter-testimony through that party's own experts.'" (quoting *Askew v. City of Memphis*, No. 14-CV-2080, 2016 WL 4533587, at *5 (W.D. Tenn. Mar. 15, 2016))).

Additionally, the affidavit does not address several of the general topics McGinnis listed in his initial disclosure of Dr. Voogt. For instance, he states in his initial disclosure that Dr. Voogt will testify as to what a flare-up is, how to return to baseline, what triggers a flare-up, and causes of major depressive disorder, [R. 110, p. 1], but does not disclose Dr. Voogt's opinions on these matters in either the initial disclosure or the affidavit. *See* [R. 110]; [R. 110-1]. LFUCG would be

surprised to learn of these wholly undisclosed opinions at trial. *See West v. Heimermann*, No. 3:20-CV-382, 2022 WL 1719676, at * 11 (S.D. Ohio May 27, 2022), aff'd, 2023 WL 1822210 (holding that even if the defendant would not be surprised that expert physicians were testifying, the defendant would nonetheless "likely be surprised to learn of [the] physicians' opinions at trial given Plaintiff's failure to provide the required summaries of such opinions as required by Rule 26(a)(2)(C)").

In response, McGinnis argues that LFUCG could not have been surprised because it possessed "ADA accommodation forms[,] medical leave documentation[,] Plaintiff's deposition testimony[,] and records discussing intermittent leave and flare-ups long before the challenged affidavit." [R. 108, p. 5]. None of McGinnis's arguments on this point are persuasive.

First, the FMLA medical leave documentation and 2022 ADA form are from McGinnis's prior employment at Haverty's Furniture Store in 2022. *See* [R. 16-2 (FMLA forms)]; [R. 106-21 (2022 ADA form)]. Those forms do not establish what opinions Dr. Voogt currently holds concerning McGinnis's condition or the flare-up at issue in this litigation. Indeed, Dr. Voogt's untimely affidavit is the first time that she clarifies that her recommendations in the 2022 ADA form extend to McGinnis's employment at LFUCG. *See* [R. 110-1, p. 2]. Additionally, the 2025 ADA form was filled out over a year after McGinnis resigned from his position at LFUCG, and Dr. Voogt checked the box on the 2025 form indicating that she had not reviewed any job description before filling it out. [R. 112-18, p. 6 (2025 ADA form)]. Thus, the 2025 ADA form, without more, does not establish that Dr. Voogt ever evaluated McGinnis's flare-up against the duties of his job at LFUCG or serve as a proper disclosure of the opinions she intends to offer concerning his ability to perform the essential job functions of a correctional officer.

In fact, none of the evidence on the record establishes that Dr. Voogt treated McGinnis during the time period he was employed by LFUCG. When questioned about this directly in his deposition, McGinnis stated that he could not remember if Dr. Voogt treated him while he worked for LFUCG. [R. 116-1, 144:10–144:15]. Accordingly, at most, the FMLA and ADA forms on the record document McGinnis's treatment and condition at points in time outside of when he worked at LFUCG.

Moreover, as discussed above, LFUCG's possession of medical records is not a substitute for the Rule 26 disclosure requirements. *See Wade v. United States*, No. 21-101552, 2022 WL 19001837, at *3 (E.D. Mich. Dec. 19, 2022) ("[T]he mere production of medical records does not satisfy subsection (C) disclosure requirements." (collecting cases)); *Cosby v. Clairborne Cty. Bd. of Educ.*, No. 3:17-CV-278-RLJ-HBG, 2018 WL 3233336, at *3 (E.D. Tenn. July 2, 2018) (emphasizing that "Defendants' access to the medical records does not constitute harmlessness under Rule 37(c)(1)" because "[o]therwise, the requirement to provide a disclosure . . . would be eviscerated").

Similarly, McGinnis's own deposition testimony, which he cites in response, [R. 108, p. 5], is not a cure for LFUCG's inability to properly depose Dr. Voogt and rebut her testimony. Allowing McGinnis to substitute depositions for Rule 26(a)(2) disclosures would "render the rule meaningless," *Ogle v. Koorsen Fire & Sec., Inc.*, 336 F. Supp. 3d 874, 877 n.2 (S.D. Ohio 2018); without knowing the substance of Dr. Voogt's anticipated opinions and the facts she relied upon, LFUCG could not ask McGinnis meaningful questions about Dr. Voogt. The deposition testimony cited by McGinnis reflects this deficiency. McGinnis claims that LFUCG questioned him "extensively" about Dr. Voogt. However, the lines cited by McGinnis reveal that LFUCG merely asked McGinnis if he asked Dr. Voogt to prepare the affidavit for this case, [R. 112-4, 441:7–

443:20], if Dr. Voogt was his doctor, [R. 106, 69:4–69:10], and what the process of filling out the FMLA and ADA forms for Haverty's was like, [R. 106-5, 69:11–70:23]. These sparse, basic questions demonstrate that McGinnis's deposition did not allow LFUCG to gather the substance of Dr. Voogt's opinions. And McGinnis's argument that LFUCG questioned McGinnis about Dr. Voogt during his deposition ignores that LFUCG was entitled to an opportunity to "examine [Dr. Voogt's] expert opinion for flaws and to develop counter-testimony through [LFUCG's] own experts." *Howard*, 2026 WL 2922676, at *10. This argument is baseless. As far as the Court can tell, LFUCG did not get the chance to depose Dr. Voogt.

The second and third factors, McGinnis's ability to cure the surprise and "the extent to which allowing the evidence would disrupt trial," *Howe*, 801 F.3d at 748, also weigh in favor of exclusion. First, "the time for [McGinnis] to remedy the surprise has passed." *Force v. HL Motor Grp., Inc.*, No. CV 19-12026, 2020 WL 13490038, at *4 (E.D. Mich. Aug. 20, 2020). As in *Force*, "[d]iscovery has closed, [LFUCG] moved for summary judgment, [and] the briefing for that motion is complete." *Id.* Therefore, "[i]t is too late for [McGinnis] to cure [his] failure to comply with Rule 26(a)(2) as it relates to the medical evidence [ ]he must rely on in opposition to [LFUCG's] motion for summary judgment." *Id.* Moreover, "to cure the surprise, the Court would need to reopen expert discovery and set another dispositive motion deadline, but [McGinnis] has not filed for an extension of either of these deadlines," and "reopening discovery and resetting a dispositive motions deadline would delay trial." *Wade*, 2022 WL 19001837, at *3 (internal quotation marks and citations omitted) (first citing *Kassim v. United Airlines, Inc.*, 320 F.R.D. 451, 454 (E.D. Mich. 2017); then citing *Dobbins v. Greyhound Lines, Inc.*, 336 F.R.D. 144, 148 (E.D. Mich. 2020)); *cf. Coleman v. Wal-Mart Stores E., LP*, No. CV 22-54-DLB-EBA, 2023 WL 7132938, at *4 (E.D. Ky. Oct. 30, 2023) ("[T]he fact that curing the surprise to Defendants would

require the reopening of discovery counsels against a finding of substantial justification or harmless[ness].").

The importance of the evidence, the fourth *Howe* factor, "cuts both ways" because "[t]he more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure." *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-CV-150-JMH-REW, 2017 WL 2295906, at *5 (E.D. Ky. May 25, 2017) (collecting cases). "Regardless, importance cannot, by itself, save improperly disclosed evidence from being found unjustified or non-harmless." *Id.* (citation modified). As such, the fourth factor is neutral. *Cf. Coleman*, 2023 WL 7132938, at *4 (relying on *EQT Prod.*, 2017 WL 2295906, to find "the fourth *Howe* factor weighs in no party's favor").

Finally, the Court must address McGinnis's "explanation for [his] failure to disclose the evidence." *Howe*, 801 F.3d at 748. McGinnis has offered "no justification for [his] failure to provide expert disclosures under Rule 26(a)(2)," and "[c]aselaw stating that the mere production of medical records is not enough is replete." *Wade*, 2022 WL 19001837, at *3 (collecting cases). Moreover, it is clear McGinnis *did* understand the Rule's requirements, at least in part, because he quoted the relevant portion of Rule 26(a)(2)(A) in his initial disclosure. *See* [R. 110, p. 1]. This factor weighs against permitting expert testimony.

In sum, four of the five *Howe* factors weigh against McGinnis, and the remaining factor is neutral. The Court holds that McGinnis has failed in his burden to establish that his failure to meet the disclosure requirements of Rule 26(2)(A) was either "substantially justified" or "harmless." *Cf. Coleman*, 2023 WL 7132938, at *4 (excluding the plaintiff's expert witnesses under Fed. R. Civ. P. 37(c)(1) when "three of the factors lean[ed] in [the d]efendants' favor, one lean[ed] slightly in [the plaintiff's] favor, and one lean[ed] in no party's favor" because the "failure to timely

disclos[e] [ ] expert witnesses was not substantially justified or harmless”). Accordingly, given the Sixth Circuit's clear directive that “[t]he exclusion of non-disclosed evidence *is automatic and mandatory* under Rule 37(c)(1) unless non-disclosure was justified or harmless,” *Dickenson v. Cardiac & Thoracic Surgery of Eastern Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004), the Court will exclude the expert opinions contained in the affidavit and will not consider those opinions when evaluating the merits of LFUCG’s motion for summary judgment.

**B. Motion for Summary Judgment**

The Court now turns to LFUCG’s Motion for Summary Judgment, [R. 106]. Under Federal Rule of Civil Procedure 56, a court may grant summary judgment if it finds “there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R. Civ. P. 56(a). “A genuine dispute of material fact exists ‘if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.’” *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden “of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.” *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted); *see also Anderson*, 477 U.S. at 256. That burden may be satisfied by demonstrating that there is an absence of evidence to support an essential element of the non-moving party’s case for which he or she bears the burden of proof. *Celotex Corp*., 477 U.S. at 323.

Once the moving party satisfies this burden, the non-moving party must then produce “specific facts, supported by the evidence in the record, upon which a reasonable jury could find

there to be a genuine fact issue for trial." *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 205 (6th Cir. 1995) (citation omitted); *see Turner-Meadows v. GM, LLC*, 786 Fed. App'x 592, 595–96 (6th Cir. 2019). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59 (1970)). However, the Court is not obligated to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.*

LFUCG contends that it is entitled to summary judgment on both Count I and Count II of the amended complaint. *See* [R. 106, p. 1]. Magistrate Judge Stinnett agreed. [R. 121, p. 16]. The Court now considers Magistrate Judge Stinnett's recommendation, including McGinnis's objections, with respect to each count.

**1. Count I**

In Count I, McGinnis asserts a failure-to-accommodate claim, as well as a related claim for failure to engage in the interactive process. [R. 16, p. 13]. LFUCG contends that it is entitled to summary judgment on these claims, *see generally* [R. 106], and Magistrate Judge Stinnett agreed. [R. 121, p. 12]. As the failure to engage in the interactive process claim is dependent upon the failure to accommodate claim, *see infra* Part III.B.3, the Court will first assess McGinnis's failure to accommodate claim before turning to his claim for failure to engage in the interactive process.

"Failure to provide a reasonable accommodation to a disabled, but otherwise qualified, person in the workplace is deemed unlawful discrimination under the ADA." *Williams v. AT&T Mobility Services LLC*, 847 F.3d 384, 391 (6th Cir. 2017). As Magistrate Judge Stinnett correctly

noted, the Sixth Circuit has established a framework for courts to apply as a threshold matter in ADA reasonable accommodation cases; the plaintiff has the burden to establish: "(1) that he is disabled, and (2) that he is 'otherwise qualified' for the position despite his or her disability." *Fisher v. Nissan North America, Inc.*, 951 F.3d 409, 417 (6th Cir. 2020) (quoting *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 868 (6th Cir. 2007)).

Magistrate Judge Stinnett concluded that he did not need to decide whether McGinnis had established enough evidence to defeat summary judgment as to the first element of the ADA reasonable accommodation framework—whether McGinnis is "disabled" pursuant to the ADA—because McGinnis definitively could not defeat summary judgment on the second element—whether he is "otherwise qualified" for the position of corrections officer. [R. 121, p. 7]. The Court agrees with Judge Stinnett that the issue of whether McGinnis is "otherwise qualified" is dispositive of his ADA reasonable accommodations claim. Accordingly, the Court addresses that issue first and need not reach the separate question of whether McGinnis is "disabled" within the meaning of the ADA.[3] The Court now turns to its analysis of whether McGinnis is "otherwise qualified" for his position as a corrections officer.

---

[3] McGinnis's objections labeled "Objection One" and "Objection Seven" are related to Magistrate Judge Stinnett's discussion of whether McGinnis was disabled within the meaning of the ADA. In objection one, McGinnis argues that Magistrate Judge Stinnett improperly weighed McGinnis's evidence of major depressive disorder. Similarly, in objection seven, McGinnis contends that the R&R improperly characterized his flare-up and requests for accommodation as a reaction to workplace discipline and coworkers he did not like, instead of considering whether the workplace events triggered a depressive flare-up. However, because McGinnis cannot establish a genuine issue of material fact as to whether he was otherwise qualified for the position, and objections one and seven are related to whether McGinnis is disabled under the ADA, resolving objections one and seven would not affect the outcome of this case. Accordingly, the Court need not address objections one and seven in this opinion. *See, e.g.*, *Lashuay v. Fornwalt*, No. 1:15-CV-1109, 2017 WL 4160947, at *1 (W.D. Mich. Sept. 20, 2017) (holding that "[t]his Court need not resolve all of the objections" to a report and recommendation because only some of them needed to be addressed to resolve the motion that was at issue in the report and recommendation); *Collins v. Bright*, No. 2:13-CV-02987-JPM-CGCm 2021 WL 5205622, at *3 (W.D. Tenn. Nov. 9, 2021) ("[T]his objection does not affect or alter the conclusions of the Magistrate Judge and is overruled as moot."); *Cline v. Kelly*, No. 09-CV-859, 2010 WL 1006529, at *1 n.1 (N.D. Ohio Mar. 16, 2010) (holding that although "[t]he Court acknowledges [the petitioner's] objection," the Court "need not resolve it because that specific fact is not relevant to the resolution of any of the grounds for relief set forth in [the] Petition," which the magistrate judge recommended be denied).

The Sixth Circuit has identified three factors germane to whether an employee is "otherwise qualified": courts should assess whether (a) the employee can perform the job "without accommodation from the employer," (b) the employee can only perform the job "with an alleged 'essential' job requirement eliminated," or (c) the employee can perform the job "with a proposed reasonable accommodation." *Nissan*, 951 F.3d at 417 (quoting *Kleiber*, 485 F.3d at 868). The Sixth Circuit has further boiled down the analysis of these factors to "two distinct questions": (1) whether the employee can perform the "essential functions" of the job, "with or without an accommodation," and (2) if the employee can only perform the essential functions of the job with accommodation, whether that "required accommodation [was] reasonable." *King v. Steward Trumbull Memorial Hospital, Inc.*, 30 F.4th 551, 560 (6th Cir. 2022).

**a. Magistrate Judge Stinnett correctly concluded that no reasonable jury could find that McGinnis was able to perform the essential functions of his job, with or without accommodation.**

Magistrate Judge concluded that "McGinnis was not able to perform the essential functions of being a corrections officer with or without accommodation." [R. 121, p. 7]. McGinnis does not contend that he could perform the essential functions of being a corrections officer *without* accommodation, and even testified that "without an accommodation, [he] was not able to work." [R. 106-5, 208:11–209:2 (McGinnis Dep.)]. Thus, this next portion of analysis focuses on whether McGinnis could perform the essential functions of being a corrections officer *with* accommodation.

**i. What are the essential functions of the job of a corrections officer?**

Before delving into whether McGinnis could perform the essential functions of being a corrections officer, the Court must first determine the essential functions of the corrections officer position. "A job function is 'essential' if removing the function would 'fundamentally alter[]' the

job." *King*, 30 F.4th at 560 (quoting *EEOC v. Ford Motor Co*., 782 F.3d 753, 762 (6th Cir. 2015) (en banc)). The Sixth Circuit has held that "[r]egular, in-person attendance is an essential function . . . of most jobs, especially the interactive ones." *Ford Motor Co*., 782 F.3d at 762–63. The ADA flags "the employer's judgment" and any "written [job] descriptions" as evidence courts should weigh in the essential-function inquiry. 42 U.S.C. § 12111(8). In the specific context of the job of a corrections officer, upholding custody and control in the facility, which is accomplished by rotating among various positions and supervising inmates, is an essential function of the job. *See, e.g.*, *Moore v. Mason Cty., Kentucky*, No. 16-185-DLB-CJS, 2018 WL 4211732, at *9 (E.D. Ky. Sept. 4, 2018) (reasoning that when considering what the essential functions of a deputy jailer are to determine whether an employee is otherwise qualified, "each of the relevant factors suggest that supervising inmates and rotating among the various positions are essential functions of the deputy-jailer position, the removal of which would 'fundamentally alter' the deputy jailer position" (quoting *Henschel v. Clare Cty. Road Comm'n*, 737 F.3d 1017, 1022 (6th Cir. 2013))); *see also* *Gera v. Cty. of Schuylkill*, No. 3:12-cv-1227, 2014 WL 6633094, at *4 (M.D. Pa. Nov. 21, 2014) ("The fundamental nature of the 'custody and control' duty to work as a corrections officer has been recognized by federal courts outside the Third Circuit and this Court must agree with their assessment.").

Here, Magistrate Judge Stinnett found, and McGinnis does not otherwise dispute, that in-person attendance at the jail was an essential function of his job as a corrections officer. [R. 121, p. 9 ("Obviously, McGinnis had to be present at the jail to perform the duties of a correctional officer.")]. Magistrate Judge Stinnett also mentions specific duties of a corrections officer, like interacting with coworkers and inmates. [R. 121, p. 9]. The Court finds that these duties, which could specifically entail things like responding to inmate incidents, following orders from

supervisors, and rotating with coworkers among various positions, are essential functions of a correctional officer's job to maintain custody of inmates and uphold security at the facility. *See Moore*, 2018 WL 4211731, at *9 ("Indeed, it would seem to be a matter of common sense that the custody and security functions—which are accomplished by rotating among the various positions and supervising inmates—are the entire reason the deputy-jailer position exists at the Detention Center."). LFUCG's statements that rotating among the positions and supervising inmates is an essential function of the correctional officer job supports this finding. *See* [R. 106-9, 97:1–97:3 (Crawford Dep.)]; *id.* at 97:16–97:22; [R. 106-23, 92:2–92:4 (LeMonds Dep.)]; *id.* at 92:8–92:11. McGinnis does not dispute that correctional officers are responsible for these duties. *See* [R. 106- 5, 100:19–124:7 (McGinnis Dep.)]; *see also* 42 U.S.C. § 12111(8) (instructing courts to give credence to "employer judgment" about what the essential functions of a job are). Instead, McGinnis disputes whether he could perform those duties with the accommodations he requested.

**ii. Is there a genuine issue of material fact as to whether McGinnis could perform the essential functions of his job with accommodation?**

McGinnis proposed several accommodations, including up to fourteen days of intermittent leave during flare-ups, [R. 106-5, 191:2–191:6 (McGinnis Dep.)], scheduling flexibilities, *id.* at 242:14–242:25, and assignment to rover duties. *Id.* at 241:6–241:18. Magistrate Judge Stinnett found that even with McGinnis's proposed accommodations, he would not have been able to perform the essential functions of his job, like showing up to the correctional facility and interacting with coworkers and inmates in a variety of ways. [R. 121, p. 9]. McGinnis lodges several objections to this conclusion. [R. 123]. The Court will now consider each proposed accommodation in turn, addressing both Magistrate Judge Stinnett's conclusions and McGinnis's corresponding objections.

**(1) McGinnis failed to establish a genuine issue of material fact as to whether his proposed accommodation of intermittent leave would enable him to perform the essential functions of his job.**

Magistrate Judge Stinnett concluded that McGinnis failed to produce evidence that up to a fourteen-day leave of absence would accommodate his depression to such an extent that he could return to work. [R. 121, pp. 9–10]. In so holding, Magistrate Judge Stinnett emphasized that McGinnis "never explains or provides contemporaneous medical proof explaining how a continuous 14-day leave would accommodate his depression to such an extent that he could 'return to baseline'" and noted that if anything, the evidence on the record—like McGinnis's testimony that two months off work had not helped him return to baseline—demonstrated that a fourteen-day leave of absence would not have accommodated McGinnis. *Id.* at 9.

McGinnis contests this reasoning in objection three. He argues that a reasonable juror could find that "intermittent absences while repeatedly returning to the same stressful workplace did not provide the uninterrupted recovery period [he] sought," and that "the post-resignation period was not necessarily comparable to an approved leave with job security, medical support, a defined return date, and an ongoing employment relationship." [R. 123, pp. 5–6]. According to McGinnis, a dispute of fact exists regarding whether the fourteen-day period of leave would have helped him return to work. *Id.* at 6.

However, while it may be true that McGinnis's intermittent absences while he still worked at LFUCG and his absence from work after resigning are distinct from the uninterrupted, fourteen-day leave that McGinnis sought, McGinnis's argument on this point misses the crux of Magistrate Judge Stinnett's conclusion. Regardless of the difference between the leave that McGinnis requested and the leave that he actually took, McGinnis has not produced any evidence that the

leave that he requested would allow him to return to baseline and return to work. When pressed in his deposition about how he knew that fourteen days of leave would help him, McGinnis merely repeats that it is what his doctor prescribed (referring to Dr. Voogt), *see, e.g.*, [R. 106-5, 211:10–18]. But the Court has already excluded the expert opinions of Dr. Voogt, including her opinion that McGinnis could perform the essential functions of his job at LFUCG with the accommodation of leave after a flare-up, [R. 110-1, pp. 1–2]. *See supra* Part III.A.

Beyond Dr. Voogt's opinions and McGinnis's own testimony (which is not itself sufficient to defeat summary judgment),[4] the only other pertinent evidence on the record is the FMLA and ADA forms. However, as the Court discussed in ruling on LFUCG's motion to exclude, those forms, without more, serve only to document McGinnis's treatment and condition at times when he was not employed by LFUCG. *See supra* Part III.A. To defeat LFUCG's motion for summary judgment, McGinnis must demonstrate that there is "evidence on which the jury could reasonably find for [him]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Here, the record contains *no* evidence from which a reasonable jury could find that fourteen days of leave would have enabled McGinnis to perform the essential functions of his job, so McGinnis failed to create a genuine dispute of material fact as to whether fourteen days of leave would have accommodated him, and objection three is overruled.

**(2) McGinnis failed to establish a genuine issue of material fact as to whether his proposed accommodation of assignment to rover duties or a flexible schedule would enable him to perform the essential functions of his job.**

---

[4] The Sixth Circuit has held that a plaintiff's "bare assertions of [a medical condition], without any supporting medical evidence, cannot establish a physical or mental impairment within the meaning of the ADA." *Neely v. Benchmark Family Servs.*, 640 F. App'x 429, 434 (6th Cir. 2016) (internal quotations omitted) (citation omitted). The Court finds this reasoning persuasive here, where McGinnis, outside of the excluded portion of the affidavit from Dr. Voogt, has not provided any medical evidence *from within the relevant time period* supporting his otherwise bare assertions that intermittent leave would have allowed him to return to work.

McGinnis makes several arguments in objection four related to the scope of the rover accommodation he sought and how that scope affected the Recommendation's analysis of whether the proposed accommodations are reasonable. [R. 123, pp. 6–7]. McGinnis contends that his request for a rover assignment was not a request for permanent rover duties coupled with start-time flexibility but rather was merely a request for temporary assignment to rover duties that otherwise adhered to typical attendance requirements. *See id.* However, even if the Court agrees with McGinnis as to the scope of the rover accommodation he requested, McGinnis has nonetheless failed to raise a genuine dispute of material fact as to whether that rover accommodation would have enabled him to perform the essential functions of his job. Accordingly, the Court need not reach the issue of whether the rover accommodation was reasonable or resolve McGinnis's objection four, which is related to Magistrate Judge Stinnett's conclusion that the rover accommodation was not reasonable.

The Sixth Circuit's decision in *Williams v. AT&T Mobility Services LLC*, 847 F.3d 384 (6th Cir. 2017) is dispositive on this issue. In *Williams*, the plaintiff, who suffered from depression and anxiety attacks, lodged an ADA failure to accommodate claim, contending that she could have performed the essential functions of her job with the accommodations of a flexible start time and additional breaks throughout the day. *Williams*, 847 F.3d at 393. The plaintiff could not perform her job when anxiety attacks occurred and could not predict exactly when those attacks would occur. *Id.* Notably, the plaintiff—whose entire job was taking incoming customer calls—admitted that "stressful" calls provoked her anxiety attacks. *Id.* The record included a nurse-practitioner's evaluation, "which stated that [the plaintiff] needed a flexible start time and ten-minute breaks every two hours," and the plaintiff's own statements that she needed those accommodations. *Id.* The Sixth Circuit, reviewing de novo the district court's decision to grant summary judgment,

affirmed the district court's decision, reasoning that nothing on the record explained how the plaintiff's request for flexible start times and breaks every two hours would mitigate the issues caused by her anxiety attacks. *Id.* at 393–94. Indeed, given the nature of the plaintiff's anxiety attacks, the Sixth Circuit noted the nurse practitioner's recommendation of breaks every two hours would be "inadequate if Williams suffered from an anxiety attack in between scheduled shifts." *Id.* at 394. Moreover, sometimes the plaintiff's anxiety and depression rendered her unable to work at all for large periods of time, even with a flexible start time and break schedule. *Id.* The plaintiff had thus "failed to make a prima facie showing that she would have been otherwise qualified even with those accommodations," and the Sixth Circuit therefore did not need to "consider whether [the] accommodations, as framed by [the plaintiff], were reasonable." *Id.*

McGinnis's request for a rover assignment suffers from the same deficiency as the *Williams* plaintiff's request for flexible start times and breaks. The *Williams* plaintiff had to completely step away from her job during anxiety attacks. *Id.* at 393. Similarly, McGinnis admitted in his deposition that when he is having a flare-up from his depression, he has to "isolate" and "calm down," [R. 106-5, 46:7–46:8], which, if he is "left alone, usually [takes] days to weeks," but otherwise, "could extend longer." *Id.* at 46:15–46:18. McGinnis repeatedly stated that during a flare-up, he cannot do any tasks, and that the only thing that helps is a leave of absence so that he can return to baseline. *E.g.*, *id.* at 205:1–205:4 ("Well, like I said, here is where I felt like I needed the leave of absence to return to baseline. So I needed—that's what I needed."); *id.* at 210:12–2:10:15 ("So whatever the tasks were, I was not able to work. And that's how I felt. And that's why I needed the leave of absence to return to baseline so I could work."); *id.* at 243:6–243:11 ("—all I really needed, was what my doctor recommended, was the leave of absence, so I could

return to baseline, so I could come to work and do my job like I had done the previous six months.”).

Additionally, like how the plaintiff in *Williams* did not explain how her proposed accommodations of ten-minute breaks every two hours and flexible start times would enable her to perform her essential job functions despite her anxiety attacks, *see Williams*, 847 F.3d at 394, so too does McGinnis fail to explain how a rover assignment would help him “return to baseline” after a flare-up so that he can perform the essential functions of showing up to work and interacting with inmates and coworkers. Indeed, ADA forms filled out by McGinnis’s doctor included a section that asked whether there were any other accommodation(s) instead of a leave of absence that would enable him to perform the essential functions of his job, and McGinnis’s doctor checked the box marked “no.” [R. 110, pp. 6, 10].

When pressed in his deposition about how the rover assignment would have helped him do his job, McGinnis states that “[t]he rover assignment gave you more movement. I thought that in my mental state would have made a difference versus being stuck in a unit. The movement alone, I think, may have helped.” [R. 106-5, 244:14–244:18]. McGinnis goes on to say, “And as I told you before, the rover position may not have worked. I don’t know. They never let me try it. But it might have been enough to mitigate how I was feeling to—so I could do the job.” *Id.* at 244:19–244:23. Nothing on the record explains how “movement” would “mitigate” McGinnis’s flare-ups; the record contains only McGinnis’s speculation that the rover accommodation might have worked. *See, e.g.*, *id.* While “any reasonable inferences” arising from McGinnis’s testimony are to be drawn in his favor, “mere speculation is not to be credited.” *Merrill v. Stone*, No. 92-1952, 1993 WL 260669, at *3 (6th Cir. June 18, 1993). As McGinnis set forth no facts to show that the rover position would enable him to perform the essential functions of his job, summary judgment on this

part of his claim is proper, and the Court need not consider whether the rover accommodation was reasonable. *See Williams*, 847 F.3d at 394.

Moreover, although in objection four McGinnis only refers to the accommodation of a flexible start time in passing, the Court nonetheless notes, for the sake of a complete record, that McGinnis failed to demonstrate a genuine issue of material fact as to how the accommodation of a flexible start time would enable him to perform the essential functions of his job. McGinnis does not explain how flexible start times would help him return to baseline after a flare-up or prevent flare-ups, and, as with the rover accommodation, the flexible start time accommodation fails at summary judgment under the reasoning in *Williams*. See id. at. 393–94.

**(3) The evidence McGinnis points to in objection two does not create a genuine issue of material fact as to whether McGinnis's proposed accommodations would have enabled him to perform the essential functions of his job.**

In objection two, McGinnis argues that "the record permits a reasonable jury to find Plaintiff qualified with accommodation" because there is evidence that he performed his correctional officer job before the flare-up and received employment with the Kentucky Department of Corrections in April of 2026. [R. 123, pp. 4–5]. These arguments fail. To begin, Plaintiff's focus on evidence that he performed the corrections-officer job for several months prior to his flare-up is misplaced. *Id.* at 4. The question before the Court is whether the proposed accommodations would enable McGinnis to perform the essential functions of the job, either by preventing flare-ups or helping McGinnis return to baseline after flare-ups, *see Williams*, 847 F.3d at 393–94, and evidence of McGinnis's ability to work before his first flare-up does not establish that the proposed accommodations would enable him to perform the job after a flare-up. Similarly, McGinnis's statement that he has been employed as a corrections officer with the Kentucky

Department of Corrections since April 20, 2026 (over two years after the flare-up that led him to resign from LFUCG), *id.*, does not shed any light on whether the accommodations proposed to LFUCG would have enabled him to perform the essential functions of his job at LFUCG. His bare assertion that he has been employed in a similar job since April 20, 2026, without additional evidence about whether he has experienced any comparable flare-ups or obtained any accommodations with KY Department of Corrections, does not connect that employment to the question at hand in this case. *See Williams*, 847 F.3d at 393–94.

Moreover, the crux of McGinnis's objection two—his argument that the record permits a reasonable jury to find McGinnis qualified with accommodation—is unsupported by the record. Indeed, as discussed above, even construing the facts in the light most favorable to McGinnis, McGinnis has not presented evidence sufficient to establish a genuine issue of material fact as to whether he was qualified with accommodation. *See supra* Part III.B.1.a.ii.(1); *supra* Part III.B.1.a.ii(2). Thus, objection two is overruled.

**b. Magistrate Judge Stinnett correctly concluded that LFUCG is entitled to summary judgment on McGinnis's claim for failure to engage in the interactive process.**

McGinnis's allegations within Count I also concern LFUCG's alleged failure to provide reasonable accommodations and engage in the interactive process. [R. 16, p. 13]. As Magistrate Judge Stinnett correctly noted, failure to engage in the interactive process is only an independent violation of the ADA if the plaintiff can successfully establish a prima facie case of failure to accommodate. [R. 121, p. 12]; *see also Thompson v. Fresh Products, LLC*, 985 F.3d 509, 525 (6th Cir. 2021) ("In this circuit, failure to engage in the interactive process does not give rise to an independent claim. Instead, it is a violation of the ADA only if the plaintiff establishes a prima facie case of failure to accommodate." (citation omitted)). Magistrate Judge Stinnett concluded

that because McGinnis could not establish a prima facie claim for failure to accommodate, his interactive process claim necessarily failed as well. [R. 121, p. 12].

In his objections, McGinnis does not dispute that his failure to engage in the interactive process claim depends upon his failure to accommodate claim. Instead, in objection six, McGinnis reiterates that there are factual disputes regarding "whether LFUCG recognized and processed" his ADA accommodation requests and whether LFUCG "participate[d] in good faith." [R. 123, p. 9]. Similarly, McGinnis claims in objection ten that the Recommendation failed to consider evidence related to whether LFUCG had notice of his disability. *Id.* at 13. He also contends in objection twelve that the Recommendation "failed to address the lack of HR involvement and ADA training." *Id.* at 16. However, the Court has already determined that that LFUCG is entitled to summary judgment on McGinnis's failure to accommodate claim because McGinnis failed to demonstrate a genuine issue of material fact as to whether the accommodations he proposed would have enabled him to perform the essential functions of his job. *See supra* Part III.B. None of the facts McGinnis points to in objections six, ten, or twelve bear on that dispositive issue. *See id.* Accordingly, the Court agrees with Magistrate Judge Stinnett's conclusion that McGinnis's interactive process claim necessarily fails, and objections six, ten, and twelve are overruled.

**2. Count II**

In Count II, McGinnis alleges a "Violation of the 1990 Americans with Disability Act Due to Discrimination in the Rehiring Process & Retaliation for Resigning his Position Due to Depression." [R. 16, p. 15]. Magistrate Judge Stinnett properly construed Count II as two separate claims: (1) a claim for discrimination in the rehiring process, and (2) a claim for retaliation. [R. 121, p. 12]. In its motion for summary judgment, LFUCG presented thorough arguments that it is entitled to summary judgment on both claims within Count II. [R. 106, pp. 21–25].

At the outset of his analysis on McGinnis's claim for discrimination in the rehiring process, Magistrate Judge Stinnett noted that because McGinnis's response to LFUCG's motion failed to address LFUCG's arguments for summary judgment on his discrimination claim in Count II, McGinnis had waived that claim. [R. 121, p. 13 (citing *Ciena Healthcare Mgmt, Inc. v. Hartford Fire Ins. Co.*, 686 F. Supp. 3d 625, 635 (N.D. Ohio 2023 (quoting *Wood v. U.S. Bank Nat'l Ass'n*, 2019 WL1255229, at *3 (N.D. Ohio Mar. 19, 2019)))]. The Court agrees.

In objection eight, McGinnis argues that he did not waive his claim for rehiring discrimination because his response to summary judgment "expressly identified pretext as a disputed issue and cited evidence concerning Defendant's knowledge, accommodation discussions, continued desire to work, and inconsistent statements." [R. 123, p. 11]. However, beyond a conclusory statement in the introduction of McGinnis's response that there are genuine disputes of material fact regarding whether "Defendant's stated reasons are pretextual," [R. 112, p. 2], McGinnis's response to LFUCG's motion does not otherwise mention pretext or how "pretext" relates to his claim for discrimination in rehiring. *See* [R. 112]. Indeed, McGinnis fails to discuss or even refer to his claim for discrimination in rehiring at all in his response, and the "Legal Standard" section in the response lists only the legal standard for his ADA failure-to-accommodate claim. *See id.* at 2. And though McGinnis did cite to evidence concerning LFUCG's knowledge of his disability and whether his proposed accommodations were reasonable, *id.* at 3–6, 7–8, he nonetheless failed to make any argument connecting that evidence to "pretext" or to his rehiring discrimination claim. *See id.*

McGinnis also argues in objection eight that certain lines of deposition testimony attached as exhibits to his response to LFUCG's motion for summary judgment "specifically addressed Count II." [R. 123, p. 11]. Similarly, he contends in objection ten that he identified certain aspects

of the record as pertinent to Count II in his deposition. *Id.* at 13. Yet, although McGinnis attached deposition excerpts to his response to LFUCG's motion for summary judgment, he did not point the Court to the particular testimony on which he now relies. *See* [R. 112, pp. 3–6, 7–8]. Instead, McGinnis identified the specific testimony and explained its significance for the first time in his objections. *See* [R. 123]. However, it was not Magistrate Judge Stinnett's "responsibility to scour the depositions for evidence that might support [McGinnis's] opposition to [LFUCG's] motion[]," and instead was McGinnis's duty to "explain how the depositions were relevant." *McBride v. Canlas*, No. 2:20-cv-212, 2023 WL 2569119, at *1 (W.D. Mich. March 20, 2023).

Additionally, in objections eight and ten, McGinnis essentially uses the cited testimony to make a new pretext argument that he never developed in his response to summary judgment. *See* [R. 123, pp. 11–12, 13–14]. Raising new arguments or issues for the first time in objections to a magistrate judge's report and recommendation is disfavored by the Sixth Circuit. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) ("Courts have held that while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate [judge]."); *see also United States v. Droganes*, 8983 F. Supp. 2d 855, 874 (E.D. Ky. 2012) ("Parties are not permitted to raise new arguments or issues to the district court that were not presented to the magistrate."). It is within the district court's discretion to find that a party forfeited an issue that was not presented to the magistrate judge, and the Court finds that McGinnis forfeited any pretext argument based on the deposition testimony identified for the first time in his objections. *See AES-Apex Emp. Servs., Inc. v. Rotondo*, 924 F.3d 857, 867 (6th Cir. 2019).

Moreover, McGinnis's response to summary judgment also failed to address LFUCG's arguments for summary judgment on his retaliation claim. *See* [R. 112]. Count II of the Amended Complaint states that McGinnis's claim is for "Retaliation for Resigning his Position Due to Depression." [R. 16, p. 15]. LFUCG construed this language to mean that the protected activity in McGinnis's retaliation claim was the resignation itself. [R. 106, p. 24]. McGinnis said nothing to dispute that construal in his response to summary judgment (and indeed said nothing about his retaliation claim at all in his response). *See* [R. 112]. He now contends for the first time in objection eight that the protected activity was "not merely resignation" and "included requesting leave or other accommodation and communicating disability-related limitations." [R. 123, p. 12]. McGinnis failed to present this argument to the magistrate judge, and he is not permitted to raise it here. *See Murr*, 200 F.3d at 902.

Though McGinnis contends that evidence on the record identified that the protected activity was not merely resignation, "[i]t is not the district court's . . . duty to search through the record to develop a party's claims; the litigant must direct the court to evidence in support of its arguments before the court." *Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 449 (6th Cir. 2008); *see also InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search through the entire record for some specific facts that might support the nonmoving party's claim."). McGinnis's failure to cite specific portions of the record related to his retaliation claim in his response to summary judgment "le[ft] [the magistrate judge] groping unaided for factual needles in a documentary haystack" and "unfairly shift[ed] the burdens of litigation to the court," *Jennings v. Bodrick*, No. 2:09-cv-208, 2010 WL 1133218, at *2 (S.D. Ohio Mar. 19, 2010) (citation omitted) (internal quotation marks

omitted), and the Court finds that he abandoned his retaliation claim. Accordingly, objections eight and ten are overruled.

**3. Remaining Objections**

McGinnis argues in several of his objections that the Recommendation failed to apply the proper summary judgment standard or consider the entire summary judgment record. [R. 123, pp. 2 (Preliminary Objection)]; *id.* at 12 (Objection Nine); *id.* at 17 (Objection 13); *id.* at 18 ("Cumulative Rule 56 Error). However, these objections do not provide a basis for rejecting the Recommendation. In concluding that LFUCG is entitled to summary judgment on all of McGinnis's claims, the Court reviewed *de novo* the portions of the Recommendation to which McGinnis objects, *see Mira*, 806 F.2d at 637, and also reviewed the record, including the evidence McGinnis contends was improperly characterized. To the extent certain evidence flagged by McGinnis in his objections impacted the Court's decision, the Court addressed those issues in its independent analysis of the claims. As explained above, *supra* Part III.B, the Court concluded—based on its own independent review of the record—that summary judgment in favor of LFUCG is proper on all of McGinnis's claims. None of the objections McGinnis raised concerning Magistrate Judge Stinnett's application of the summary judgment standard affected that ultimate disposition, *see id.*, so the objections contending that Magistrate Judge Stinnett misapplied the summary judgment standard are overruled.

In sum, the Court disagrees with Magistrate Judge Stinnett's recommendation to deny LFUCG's motion to exclude as moot and instead grants LFUCG's motion to exclude the expert opinions of Dr. Voogt. With the expert opinions from Dr. Voogt excluded, the Court agrees with Magistrate Judge Stinnett's ultimate disposition granting summary judgment. The alleged

factual disputes and alleged errors in the Recommendation identified by McGinnis in his objections are overruled.

## IV. CONCLUSION

For these reasons, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. Magistrate Judge Stinnett's Report and Recommendation, [**R. 121**], is **ADOPTED in PART** as the Opinion of the Court.
2. Plaintiff's Objections, [**R. 123**], to the Report and Recommendation are **OVERRULED**.
3. Defendant's Motion for Summary Judgment, [**R. 106**], is **GRANTED**.
4. Defendant's Motion to Exclude, [**R. 107**], is **GRANTED.**
5. A separate judgment will be entered consistent with this order.

This the 10th day of November, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY